UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ANDRE VAKHOULA,

Petitioner,

v.                                                    CAUSE NO. 3:26cv276 DRL-SJF

BRIAN ENGLISH,

Respondent.

<u>OPINION AND ORDER</u>

Immigration detainee Andre Vakhoula filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The respondent answered the petition, and Mr. Vakhoula filed a reply. The petition is ready to be decided.

Mr. Vakhoula was a citizen of the Union of Soviet Socialist Republics (USSR), residing in a region that is now within the country of Ukraine. He entered the United States in 1992. On November 15, 2018, he was convicted of burglary in New York and sentenced to imprisonment. On April 11, 2025, an immigration judge ordered him removed to Ukraine. On July 17, 2025, Mr. Vakhoula was transferred to immigration detention, and he is currently held at the Miami Correctional Facility.

On April 27, 2026, a United States Immigration and Customs Enforcement (ICE) official submitted an affidavit attesting that, on April 20, 2026, the government submitted a formal request for travel documents to Ukraine. On April 25, 2026, Ukraine declined to issue

a travel document because he was a citizen of the USSR. The government is currently exploring other removal options for Mr. Vakhoula.

The respondent first argues that the court lacks subject matter jurisdiction over Mr. Vakhoula's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). The court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For the reasons given before, jurisdiction is secure insofar as this opinion goes. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Vakhoula ended in October 2025. *See* 8 U.S.C. §§ 231(a)(1)(A), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[1] The Warden relies on Section 1231(a)(6) as the basis for Mr. Vakhoula's current detention.

---

[1] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. His indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533

3

U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. Even thereafter, the court listens with care when the government's "foreign policy judgments" — such as the status of repatriation negotiations — are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. But "once [he] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). Nor must the court engage the same constitutional dilemma that § 1231(a)(6) could present merely

because this is a second period of detention and not his first. *See Zadvydas*, 533 U.S. at 690. The court may consider not just what led to his original detention and release years ago, to the extent still pertinent, but also what circumstances newly exist today. Despite the old adage, past isn't always prologue in this context, and just because removal couldn't occur before doesn't mean it can't reasonably occur today under renewed efforts. At the same time, nothing in § 1231(a)(6) and nothing in *Zadvydas* suggests that the mere passage of time erases everything about the initial showing to make it all irrelevant. *See also Vu v. English*, No. 3:25cv999, 2026 WL 194171, 11-14 (N.D. Ind. Jan. 26, 2026) (Leichty, J.); *cf. Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 10-11 (N.D. Ind. Jan. 14, 2026) (Leichty, J.).[2] After all, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Id.* at 701.

Because Mr. Vakhoula has been in detention for longer than six months, the court turns to whether his removal is reasonably foreseeable. To start, the respondent identifies only Ukraine as a candidate country for removal, but Ukraine recently declined to issue travel documents. Though the government indicated that it is exploring other removal options, Mr. Vakhoula's detention now spans ten months with only a vague hope of removal. The court finds that Mr. Vakhoula has met his preliminary burden of showing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.

---

[2] No one should read either *Vu* or *Kem* as indicating that an original showing always remains gospel or shifting the burden.

To rebut this showing, the respondent says the government is currently exploring other removal options in light of Ukraine's refusal to issue travel documents. This attestation offers little insight into the government's removal plans going forward and doesn't demonstrate that Mr. Vakhoula's removal is likely to occur in the reasonably foreseeable future. The court appreciates the difficult timing—Ukraine refused to issue travel documents on April 24, 2026, and the government filed its response brief on April 27, 2026, so that gave little time for the government to develop and then propose an alternative plan for removal. But all that was a month ago; and, since then, the government has not amended its response to indicate that it now has sights on a new plan or why that new plan might bear fruit of removal in the foreseeable future. The best laid plans of mice and men sometimes counsel a contingency plan, or at least a prompt pivot to one when original plans fail, particularly when nine months becomes ten months and the time within detention seems rather indefinite from today's snapshot of the record. *See Zadvydas*, 533 U.S. at 701.

In short, the government has not shown a likelihood of Mr. Vakhoula's removal in the reasonably foreseeable future. Therefore, the respondent must release him under *Zadvydas*. It would be inappropriate for the court, as a neutral arbiter, to construct a different argument for his continued detention or to extend the time (without request) in the view that the government might next time have a plan. *See Margolin v. Nat'l Ass'n of Immigr. Judges*, 2026 U.S. LEXIS 2251, 3-4 (May 26, 2026) (*per curiam*); *Clark v. Sweeney*, 607 U.S. 7, 9 (2025). Efforts to remove Mr. Vakhoula may continue while he returns to supervision, on the same conditions as his last release.

For these reasons, the court:

(1) GRANTS the petition for writ of habeas corpus [1] and ORDERS the respondent to release Andre Vakhoula on the same conditions of supervised release that existed before his re-detention and to certify compliance with this order by filing a notice with the court by **May 28, 2026**; and

(2) DIRECTS the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure his release.

SO ORDERED.

May 26, 2026                    _s/ Damon R. Leichty_
                               Judge, United States District Court